UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CORNETT RESTORATION LLC d/b/a<br>CORNETT ROOFING SYSTEMS,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN SLATE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) CASE NO. 1:07-cv-1541-DFH-DML<br>)<br>)<br>)<br>)<br>) |

ENTRY ON MOTION TO DISMISS FOR IMPROPER VENUE.

After a large hailstorm damaged many roofs in Indianapolis in the spring of 2006, including some expensive slate roofs, plaintiff Cornett Restoration, LLC had work to do. Cornett purchased a supply of slate from defendant American Slate Company. Cornett asserts that some of the slate was defective. It brought this diversity action for damages, including consequential damages.

After discovery was completed and as trial approached, defendant American Slate moved to dismiss for improper venue. American Slate argues that plaintiff agreed to arbitrate such disputes in Contra Costa County, California, where defendant is located. Defendant American Slate includes such an arbitration clause on the back side of its original printed invoices. Plaintiff Cornett contends that it never received a copy of the arbitration clause, let alone agreed to it. Cornett argues that the parties reached the terms of their contract by facsimile

and telephone communications that never included the arbitration clause. The court held an evidentiary hearing on May 8, 2009 to address the factual issues that control the venue question. As explained below, the court finds that venue is proper in the Southern District of Indiana because defendant has failed to prove that plaintiff agreed to arbitrate the case. The motion to dismiss for lack of venue is denied.

Venue in this case is governed by 28 U.S.C. § 1391(a), which provides that this diversity action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Southern District of Indiana is a proper venue for this case because "a substantial part of the events or omissions giving rise to the claim" occurred in Indiana.

When venue is otherwise proper and a defendant contends that the plaintiff has agreed to arbitrate the dispute, a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure is the proper vehicle for raising the issue. *Continental Casualty Co. v. American National Insurance Co.*, 417 F.3d 727, 733 (7th Cir. 2005). In deciding such issues, the court may

consider evidence outside the pleadings, resolve factual disputes outside the pleadings, and resolve factual disputes through use of appropriate procedures. See *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001) ("When jurisdiction or venue depends on contested facts – even facts closely linked to the merits of the claim – the district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed.").

Because venue is proper here unless there was an agreement to arbitrate, the burden of persuasion is on the party seeking to show that there was an agreement to arbitrate. The alleged agreement is in effect an affirmative defense to venue that is otherwise proper. Cf. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) (applying Indiana law to decide arbitrability of employment discrimination claims, and noting that party seeking to compel arbitration has burden of proving an enforceable arbitration agreement); see also *Pioneer Supply Co. v. American Meter Co.*, 484 F. Supp. 227, 229 (W.D. Okla. 1979) (party seeking stay of lawsuit under Federal Arbitration Act, 9 U.S.C. § 3, has burden of proving that agreement is arbitrable under valid agreement); *Penalver v. Compagnie De Navigation Frutiere, Matouba*, 428 F. Supp. 1070, 1072 (E.D.N.Y. 1977) (same); *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind. App. 1995) (party seeking to compel arbitration must show an enforceable agreement to arbitrate the dispute).

Practical and impatient business-people do not always document every detail of their deals, of course, and this case illustrates the point. On July 5, 2006, plaintiff Cornett contacted defendant American Slate to purchase roofing slate for two particular houses in Indianapolis. American Slate gave Cornett an oral price estimate followed by a written price quotation sent via facsimile. Def. Ex. 1. The written quotation was on a form that included the following language:

> THIS PROPOSAL AND QUOTE FOR MATERIAL DOES NOT INCORPORATE ALL OF THE TERMS AND CONDITIONS OF SALE. This proposal and quote is furnished solely for the purpose of providing Purchaser written confirmation of price for materials specified herein. This document is not a binding contract until all terms and specifications contained in ASC Contract to Supply have been accepted and executed by both parties.

Def. Ex. 1. The evidence shows that American Slate never sent Cornett an "ASC Contract to Supply" and that neither party ever executed such a document. American Slate's Bill Sims testified that the form's reference was outdated and that such a form had not been used in his seven years with the company because it was too slow and unwieldy to insist that the parties exchange a document they had both signed. Hearing Tr. 61-62, 69.

The written price quotation on July 5th contained a mistake that the parties discussed by telephone. The written calculations used an incorrect price ($388 per "square" of slate). The correct price was $338 per square, so the file copy of the quotation and several other key documents include handwritten changes. With the price correction, Cornett accepted the quotation and on July 7th sent

American Slate a check for $14,359.50. After American Slate received the payment, it shipped the product to Indiana on July 10th. See Def. Ex. 7 (bill of lading).

American Slate uses a four-layer invoice form to keep track of its sales of slate. The top layer is white and is called the "customer copy." On the front, it has a disclaimer about the natural variations in slate and the following small but bold print: "Buyer further acknowledges that they have read, understand, and accept all of the terms and conditions set forth on the front and reverse side of this invoice and any attachments." Def. Ex. 4. This is an odd acknowledgment; the invoice form does not call upon the buyer to sign or otherwise respond to the form at all.

The back side of the white copy of the invoice has 15 "Terms and Conditions." Def. Ex. 6. Paragraph 13 is the important one here. It states:

> Arbitration and Applicable Law – This agreement shall be governed by the laws of the State of California and shall be deemed to be made in Contra Costa County, state of California. The parties hereto agree that any disputes arising out of or in connection with this agreement, shall be submitted to the American Arbitration Association for binding arbitration. All arbitration shall be conducted in Contra Costa County.

The problem for American Slate is that Defendant's Exhibit 4, the white "customer copy" of the invoice for the disputed Cornett deal (Invoice No. 07-10189) was found in the files of American Slate itself. American Slate might have faxed the

front side of the invoice to Cornett, but if it did so, it did not fax the terms and conditions on the back side. In any event, the evidence shows that Cornett never received the white copy with the terms and conditions, let alone received it before the deal was actually closed. Cornett had in its files only the pink "accounts" copy of the invoice (or a fax of it, with the price correction). See Def. Ex. 5; Hearing Tr. 14-15 (Cornett). American Slate's Bill Sims testified that even the original pink accounts copy did not include the terms and conditions on the reverse side. Hearing Tr. 58.[1]

Mr. Sims of American Slate testified that it was the company's usual practice to mail the white "customer" copy of the invoice to the customer with the terms and conditions on the back side. Hearing Tr. 55. He made this point at other points in his testimony, as well. But he did not know whether the company followed the usual practice in this case. *Id.* at 68-70. In fact, the evidence shows that the company did not follow the usual practice in this case. The white customer copy for the disputed transaction was found in the files of American Slate itself. American Slate has not shown that it sent Cornett any document with the terms and conditions, including the arbitration clause, in connection with this transaction. The court therefore need not address whether the arbitration clause was included in the contract terms through UCC Section 2-207(2) (adopted in

---

[1]American Slate also offered Defendant's Exhibit 10, an American Slate invoice in Cornett's files from an earlier 2006 transaction. That document is also an "accounts" copy of the American Slate invoice. Again, even the original accounts copy would not have had the "Terms and Conditions" on the back.

Indiana as Indiana Code § 26-1-2-207(2)), even if it was mailed so that the buyer would not receive the terms and conditions until after it had paid for and after American Slate had shipped the product.[2]

American Slate has also tried to suggest that Cornett should be bound by the terms and conditions that were never sent to it because it never called American Slate to ask about the terms and conditions referenced in the small print on the front of the invoice. Section 2-207 of the UCC provides a vehicle for including terms in contracts by actually sending them to the other side, even if there is not a single document signed by both parties encompassing all relevant terms. But the UCC does not go so far as to allow one party to put the burden on

---

[2]Cornett's order is best understood as the offer and American Slate's full invoice (if it had been sent) as an acceptance that proposed new terms. Under UCC § 2-207(2):

> The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a)   the offer expressly limits acceptance to the terms of the offer;
> (b)   they materially alter it; or
> (c)   notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

See generally *Dale R. Horning Co. v. Falconer Glass Industries, Inc.*, 710 F. Supp. 693, 697-99 (S.D. Ind. 1989) (discussing "battle of forms" under § 2-207(2) and holding that forum selection clause requiring litigation in New York materially altered contract and thus was not included in terms of contract); cf. *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 851-52 (Ind. App. 1995) (holding under § 2-207(2) that whether arbitration clause materially alters an agreement depends on circumstances of each case).

the other party to ask for a copy of any secret terms that the other party has not communicated but hopes will be included in the deal.[3]

American Slate has failed to show that Cornett agreed to arbitrate disputes arising from this transaction. American Slate's motion to dismiss for improper venue is denied. The court will contact counsel shortly to set a new, and prompt, trial date.

So ordered.

Date: July 8, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

---

[3] This is not a case in which one party writes that it incorporates into the contract the terms of a publicly available document, such as a trade association's rules, as was the case in *Wilson Fertilizer*. See 654 N.E.2d at 853-54. American Slate also relies on *Vaeda Industries, Inc. v. Jason, Inc.*, 2008 WL 687304 (N.D. Ind. March 7, 2008), in which the court criticized the plaintiff-seller for having never asked the buyer for the "terms and conditions" referenced in its purchase orders. In *Vaeda Industries* the Indiana seller relied only on an unconscionability argument to challenge the forum selection clause requiring litigation in Wisconsin. The court pointedly observed that an argument under § 2-207 "may have been more successful." *Id.* at *3.

-9-

Copies to:

Terrence L. Brookie
FROST BROWN TODD LLC
tbrookie@fbtlaw.com

J. Michael Cavosie
EASTER & CAVOSIE
mcavosie@easterandcavosie.com

Michelle R. Maslowski
FROST BROWN TODD LLC
mmaslowski@fbtlaw.com

Ernest Roy Rodabaugh IV
EASTER & CAVOSIE
rrodabaugh@easterandcavosie.com